IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CURTIS WILLIAMS,

    Plaintiff,

      v.

GWINNETT COUNTY PUBLIC
SCHOOLS, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:09-CV-2206-TWT

ORDER

      This is an employment discrimination action.  It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 24].  For the reasons set forth below, the Defendants' motion is GRANTED.

## I.  Background

      The Plaintiff, Curtis Williams, was employed as a Stellar Substitute Teacher at Sweetwater Middle School, part of the Gwinnett County Public School System. Georgann Eaton was the principal of Sweetwater during the time Williams worked there.  While employed by Sweetwater, Williams was an "at-will" employee.  At no time did the Plaintiff have a contract for employment with Eaton, Sweetwater, or the Gwinnett County Public School System.

Sweetwater administers a program called Read 180.  This program uses therapy dogs as part of the school curriculum. Teacher Paige Suhay administers the Read 180 program at Sweetwater.  Under the policies set forth for the Read 180 program, therapy dogs are present on campus but must be kept on a leash, in a crate, or under the direct control of a handler at all times.  On March 27, 2009, the Plaintiff sent an email message to the staff at Sweetwater expressing his views on the Read 180 program.  Williams' email, entitled "My Life is not a Life of Dogdom," criticized the presence of dogs at Sweetwater.  In the email, Williams claimed that he was allergic to dogs and that he had seen a dog in the school cafeteria.  Further, in reference to Paige Suhay, Williams asked, "[i]s my need to rescue animals (dogs specifically) of more importance by bringing them to school and subjecting others to my fetish?" (Williams Dep., Ex. 15.)

On March 30, Eaton sent the Plaintiff a letter of direction advising him that his "use of Lotus Notes Email was inappropriate and unacceptable." (Williams Dep., Ex. 18.)  Eaton also directed Williams to submit a written response and instructed him to meet with Human Resources Director Dr. Russell Fleenor at 9 a.m. on April 3, 2009. The Plaintiff never submitted a written response to Eaton's letter.  Further, on the morning of April 3, Williams did not appear for the meeting with Dr. Fleenor. Instead, Williams reported to Sweetwater.   Upon discovering the Plaintiff at

Sweetwater, Eaton escorted him from campus and directed him to report to Dr. Fleenor's office.  The Plaintiff arrived at his meeting with Dr. Fleenor later that day.

At some point on the morning of April 3, Dr. Fleenor met with Dr. Sidney L. Camp, Gwinnett County School District's Executive Director.  During the meeting, Dr. Camp accepted Dr. Fleenor's recommendation to fire Williams.  When Williams finally arrived at Dr. Fleenor's office, Dr. Fleenor informed him that he was terminated.  The Defendants claim that Williams' termination resulted from his failure to arrive on time to the meeting with Dr. Fleenor, his failure to respond to the letter of direction from Eaton, and his history of unprofessional conduct toward students and staff.

On July 14, 2009, the Plaintiff filed this action against Eaton and Gwinnett County Public Schools [Doc. 1].  In the Complaint, Williams asserted claims for wrongful termination, libel, slander, denial of his First Amendment and due process rights, disability, race, and gender discrimination, and violation of state health and safety laws [Doc. 1].  The Plaintiff argued that he was fired because he spoke out about dogs at Sweetwater.

On October 1, 2009, Williams filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging race, gender, and disability discrimination. (Eaton Dep., Ex. 22.)  The EEOC dismissed the Plaintiff's complaint as not timely

filed.  Claims for employment discrimination under the ADA and Title VII must be filed within 180 days of the last discriminatory act.  See 42 U.S.C. § 2000e-5; 42 U.S.C. § 12117(a).  In Williams' EEOC complaint, he alleged that the discrimination occurred on April 3, the date Dr. Fleenor notified Williams of his termination. Because Williams did not file his complaint until October 1, the EEOC dismissed it as untimely filed.[1]

The Defendants have filed a Motion for Summary Judgment [Doc. 24].  Along with other defenses, the Defendants assert that Gwinnett County Public Schools is not a legal entity amenable to suit.  (Defs.' Memo. in Supp. of Defs.' Mot. for Summ. J., at 3.)  In response, the Plaintiff filed a Motion to Amend Complaint [Doc. 29], substituting Gwinnett County School System for Gwinnett County Public Schools. The Court granted the Plaintiff's motion.

## II.  Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light

---

[1]The Plaintiff filed his EEOC complaint 181 days from April 3, 2009, the date of the alleged discrimination.

most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  Discussion

### A.   Termination Claims as to Defendant Georgann Eaton

Defendant Georgann Eaton claims that she was not responsible for the decision to fire the Plaintiff.  Thus, she argues, all claims against her arising from the Plaintiff's termination should be dismissed.  Eaton testified that she did not make the decision to fire Williams.  (Eaton Dep. at 37.)  Further, Eaton stated that at the time she wrote Williams a letter of direction, she did not intend to fire him.  Id.  Indeed,  Dr. Camp testified that *he* made the decision to fire Williams on the recommendation of Dr. Fleenor.  (Camp Aff. ¶ 10.)  Finally, Dr. Fleenor, and not Eaton, communicated that decision to the Plaintiff.  Although Williams baldly asserts that Eaton fired him, he offers no evidence to support this claim.  Indeed, the Plaintiff admits that Dr. Fleenor, and not Eaton, told him he was fired during the April 3 meeting.  (Williams Dep. at 139, 145.)  The Plaintiff offers no facts to contradict the testimony of Dr. Camp and

Defendant Georgann Eaton.  For this reason, there is no issue of material fact as to the Plaintiff's claims against Eaton for wrongful termination, race, sex, and disability discrimination, or violations of the Plaintiff's First and Fourteenth Amendment rights.

      B.    <u>Wrongful Termination</u>

      The Plaintiff argues that the "Defendants arbitrarily and capriciously terminated Plaintiff's employment as Stellar Substitute, without adequate cause." (Compl. at 8.) In response, the Defendants argue that Williams was an "at-will" employee.  "Under Georgia law, in the absence of a controlling contract between the parties, employment for an indefinite period is terminable at will by either party."  <u>Warren v. Crawford</u>, 927 F.2d 559, 562 (11th Cir. 1991).  An employer may terminate an "at-will" employee without liability "for a good reason, a bad reason, or no reason at all." <u>Phillips v. Goodyear Tire & Rubber Co.</u>, 651 F.2d 1051, 1054 (5th Cir. 1981).

      Here, the Plaintiff was an "at-will" employee.  The Defendants presented evidence that Stellar Substitute Teachers are "at-will" employees and that Williams never had a contract of employment with the Gwinnett County School District. (Camp Aff. ¶ 11.)  Williams has presented no evidence that he had a contract with the Defendants.  Thus, the Defendants incur no liability for "arbitrarily and capriciously" terminating Williams.  For this reason, there is no issue of material fact as to the Plaintiff's wrongful termination claim.

C.      Due Process

The Plaintiff argues that he is entitled to a name-clearing hearing under the Due

Process Clause of the Fourteenth Amendment.  "[M]ere discharge–whether for no

reason or for permissible reasons–[does] not implicate the due process requirements

of the fourteenth amendment." Clemons v. Dougherty County, 684 F.2d 1365, 1371

(11th Cir. 1982).  "To prevail on his fourteenth amendment claim, [the employee]

must first establish that his termination was attended by stigmatizing charges which

'might seriously damage his standing and associations in his community' or foreclose

'his freedom to take advantage of other employment opportunities.'" Id. (quoting

Dennis v. S & S Consol. Rural High Sch. Dist., 577 F.2d 338, 342-3 (5th Cir. 1978)).

In Clemons, the plaintiff police officer was discharged after criticizing a

supervisor.  Clemons, 684 F.2d at 1367.  The reasons given for the plaintiff's

discharge included lack of respect, unprofessional conduct, creating workplace

dissension, and slander of fellow officers.  Id.  The plaintiff sued for a violation of his

due process right to a name-clearing hearing.  Id.  The Eleventh Circuit held that the

plaintiff was entitled to a hearing, reasoning that "[the plaintiff] was the subject of at

least potentially stigmatizing charges." Id. at 1371.  The court declined "to impose

any limitation on the charges which will implicate fourteenth amendment concerns

beyond the settled requirement that they threaten serious damage to one's standing and

associations in the community or foreclose his freedom to take advantage of other employment opportunities." Id. at 1373. There was, the court concluded, "a fact issue whether the accusations against [the plaintiff] were of such a nature." Id.

Here, the Defendants argue that Williams was fired for insubordination (failure to attend the meeting with Dr. Fleenor and respond in writing to Eaton) and "a history of inappropriate communications with staff and students." (Defs.' Memo. in Supp. of Defs.' Mot. for Summ. J., at 8.) These allegations, unlike those in Clemons, are not stigmatizing. Furthermore, there are no facts in dispute that require a hearing. It is undisputed that the Plaintiff sent the inappropriate email. It is undisputed that the Plaintiff did not comply with Eaton's directives and did not show up for the meeting with Dr. Fleenor. Thus, there is no issue of material fact as to whether the Plaintiff is entitled to a name-clearing hearing.[2]

D.    First Amendment

The Plaintiff claims that the Defendants violated his First Amendment rights by terminating him in retaliation for his "My Life is not a Life of Dogdom" email. To

---

[2]As noted in Clemons, even if the Plaintiff prevailed on his due process claim, he would "be entitled to a hearing at which he may attempt to refute the stigmatizing charges." Clemons, 684 F.2d at 1365 n.7. The hearing will not afford him the opportunity to receive reinstatement or backpay.

sustain a claim for retaliation under the First Amendment, a public employee must show:

> (1) the employee's speech is on a matter of public concern; (2) the employee's First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a "substantial part" in the employer's decision to demote or discharge the employee. Once the employee succeeds in showing the preceding factors, the burden then shifts to the employer to show, by a preponderance of the evidence, that "it would have reached the same decision ... even in the absence of the protected conduct."

Battle v. Board of Regents, 468 F.3d 755, 760 (11th Cir. 2006) (quoting Anderson v. Burke County, 239 F.3d 1216, 1219 (11th Cir. 2001)).

The Defendants argue that Williams' email did not address a matter of public concern.  In determining whether speech touches a matter of public concern, courts consider "whether the 'main thrust' of the speech in question is essentially public in nature or private, whether the speech was communicated to the public at large or privately to an individual, and what the speaker's motivation in speaking was." Mitchell v. Hillsborough County, 468 F.3d 1276, 1283 (11th Cir. 2006) (citations omitted).

In Boyce v. Andrew, 510 F.3d 1333 (11th Cir. 2007), two case workers were fired after complaining that their excessive case load endangered the children they

were assigned to protect.  The case workers voiced these concerns to their supervisors and coworkers.  Id. at 1344.  The Eleventh Circuit held that the employer did not violate the plaintiffs' First Amendment rights.  Id. at 1346.  The court reasoned that the employees' speech "did not address any subject not personal to [their] working conditions."  Id. at 1344.  "A 'public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run.'"  Id. (quoting Ferrara v. Mills, 781 F.2d 1508, 1516 (11th Cir. 1986)).  Importantly, the court noted that the plaintiffs' speech was directed only at supervisors and coworkers, rather than the public at large.  Id.  at 1346.  "[T]he First Amendment does not require a public office to be run as a roundtable for employment complaints over internal office affairs."  Id. (quoting Connick v. Myers, 461 U.S. 137, 149 (1983)).

Here, the Plaintiff's email addressed "personal working conditions" rather than matters of public concern.  The Plaintiff's email criticized an internal school policy in an effort to improve his working conditions.  As in Boyce, the Plaintiff did not publicly distribute the email, but sent it only to Sweetwater faculty, using the school's Lotus Notes program.  Williams' brief reference to children who, like he, might suffer from dog allergies does not transform his personal employment grievance into a matter of public concern.  See Renfroe v. Kirkpatrick, 722 F.2d 714, 715 (11th Cir.

1984) ("[P]laintiff's reference to the students' welfare during her oral presentation to the Board is not sufficient to bring her grievance within the rubric of matters of 'public concern.'"). Thus, Williams' speech is not entitled to First Amendment protection as a matter of public concern. For this reason, there is no issue of material fact as to the Plaintiff's First Amendment claim.

      E.      Timely Filing of EEOC Complaint

The Plaintiff alleges violations of the Americans with Disabilities Act (ADA) and Title VII of the Civil Rights Act of 1964 (Title VII). See 42 U.S.C. § 1201 *et seq.*; 42 U.S.C. § 2000e *et seq.* In response, the Defendants argue that Williams' discrimination claims are barred because he failed to exhaust his administrative remedies by filing a timely complaint with the EEOC.

Before filing suit under the ADA or Title VII, a plaintiff must exhaust his administrative remedies by filing a timely charge with the EEOC. 42 U.S.C. § 2000e-5; 42 U.S.C. § 12117(a); Butler v. Greif, Inc., 325 Fed. Appx. 748, 749 (11th Cir. 2009); Wilkerson v. Grinnell, 270 F.3d 1314, 1317 (11th Cir. 2001). The charge must be filed within 180 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1). The clock "begins to tick as soon as an employee is *notified* of the allegedly discriminatory adverse employment decision–not at a later date when the already-

firmly-announced adverse decision takes effect." <u>Marley v. Addus Healthcare, Inc.</u>, 122 F. Supp. 2d 954, 957 (N.D. Ill. 2000) (emphasis added).

In <u>Delaware State College v. Ricks</u>, 449 U.S. 250 (1980), the defendant employer met with the plaintiff employee and communicated the employer's decision to terminate the employee. The plaintiff then filed a grievance with the Board of Trustees. <u>Id.</u> at 252.  The Board officially denied the plaintiff's grievance almost two months later, though the plaintiff continued working for another year. <u>Id.</u> at 260.  The Court held that the time for filing an EEOC complaint began running when the plaintiff was notified of the employer's decision to terminate him, not the date on which the Board formally denied his grievance. <u>Id.</u> at 261.  Although the original notice indicated that the plaintiff would not be terminated if the Board sustained his grievance, the Court reasoned that "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period." <u>Id.</u>

Here, the limitations period to file Williams' EEOC complaint began to run when he was notified of his termination on April 3, 2009.  Indeed, when Williams finally filed an EEOC complaint, almost three months after filing this lawsuit, he indicated that the alleged discrimination took place on April 3.  (Williams Dep., Ex. 22.)  Williams admits that Dr. Fleenor told him that he was being terminated on April

3, 2009.  (Williams Dep. at 145.)  Dr. Camp testified that he made the final decision to fire Williams on April 3 based on Dr. Fleenor's recommendation.  (Camp Aff. ¶ 18.)  As in <u>Delaware State</u>, the original decision to fire Williams was communicated to him on April 3, starting the 180-day limitations period to file an EEOC complaint. Williams filed his EEOC complaint on October 1, 2009, 181 days from the day he was fired.  The EEOC dismissed Williams' complaint as untimely filed.  (Williams Dep., Ex. 23.)  Thus, Williams did not exhaust his administrative remedies.  For this reason, there is no issue of material fact as to Williams' ADA or Title VII claims.

       F.     <u>Americans with Disabilities Act</u>

       Even if the Plaintiff had exhausted his administrative remedies, there is no issue of material fact as to the Plaintiff's ADA claim.  Williams argues that his dog allergy is a disability under the ADA.  He claims that he was terminated because this disability prevented him from working around dogs at Sweetwater.

       The ADA prohibits employment discrimination on the basis of disability.  42 U.S.C. § 12111(8).  Under the ADA, disability is defined as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  Here, even if the Plaintiff's dog allergies are a physical impairment, there is no evidence that this impairment "substantially limits" any of Williams' major life activities.  Before April 2009, Williams worked at Sweetwater while dogs were

present.  During this time, Williams did not claim that his allergies hindered him in any way.  Indeed, Williams visited a doctor regarding his allergies only *after* he had been terminated.

Further, there is no evidence that the Plaintiff was fired because his disability prevented him from performing his job around dogs.  Williams had worked at Sweetwater without an allergy-related incident since joining the faculty in 2007.  Notably, Eaton's May 30 letter indicated that the Defendants would make accommodations to ensure that Williams' allergies did not interfere with his job.  (Williams Dep., Ex. 18.)   For these reasons, even if the Plaintiff had exhausted his administrative remedies, there is no issue of material fact as to the Plaintiff's ADA claim.

G.     Title VII

The Plaintiff also asserts claims for race and sex discrimination under Title VII of the Civil Rights Act of 1964.  See 42 U.S.C. § 2000e *et seq*.  As discussed above, these claims are barred because the Plaintiff did not file a timely complaint with the EEOC.  Even if the Plaintiff had exhausted his administrative remedies, however, there is no issue of material fact as to the Plaintiff's Title VII claims.

To establish a *prima facie* case for discrimination under Title VII, the plaintiff must show that: "(1) she is a member of a protected class; (2) she was subjected to

adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job or job benefit at issue." Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 842-3 (11th Cir. 2000). If the Plaintiff establishes a *prima facie* case, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981). If the defendant offers such evidence, the plaintiff "must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." Id. at 256.

Here, the Plaintiff has failed to produce any facts that establish a *prima facie* case of discrimination. Beyond showing that he is a black male, Williams has failed to produce any evidence proving that he was treated differently because of his race or gender. In his deposition, Williams admits that he does not know of any white or female employee who was treated differently by the Defendants. (Williams Dep. at 151-152.) Further, the Defendants have proffered a nondiscriminatory reason for terminating the Plaintiff. Even if Williams had established a *prima facie* case, he has not offered any evidence showing that "a discriminatory reason more likely motivated the employer." Id. For these reasons, there is no issue of material fact as to the Plaintiff's Title VII claim.

H.    Defamation

The Plaintiff asserts a claim for libel and slander.  In Georgia, libel is "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule."  O.C.G.A. § 51-5-1(a).  Slander or oral defamation requires proof that the statement "was (1) false, (2) malicious, and (3) published."  Davita Inc. v. Nephrology Assocs., P.C., 253 F. Supp. 2d 1370, 1375 (S.D. Ga. 2003) (citing Information Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1228 (11th Cir. 2002)); see also O.C.G.A. § 51-5-4.

Here, the Plaintiff has produced no evidence that the Defendants made any defamatory statement.  In his affidavit, Williams states "[t]hat he was advised by a potential employer that derogatory information was placed in his employment record by Gwinnett County School System."   (Williams Aff. ¶ 3.)  This statement is inadmissible hearsay and "cannot be considered on a motion for summary judgment." Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  Even if this statement were not hearsay, Williams has not shown what "information" was placed in his employment record or that such information was defamatory.  For these reasons, there is no issue of material fact as to the Plaintiff's defamation claims.

I.      Heath and Safety Violations

The Plaintiff asserts a claim for violations of "health and safety laws and regulations governing animals in the state of Georgia."  (Compl. ¶ 19.)

1.      Regulatory Violations

Although Williams failed to specify any statute in his Complaint, in the Plaintiff's Response to Defendants' Motion for Summary Judgment, the Plaintiff alleges that the Defendants violated DHR regulation 290-5-14.07.  (Pl.'s Memo. in Opp'n to Defs.' Mot. for Summ. J., at 11.)  Even if the Defendants violated this statute,[3] the DHR regulation does not provide a private cause of action for the Plaintiff.  Further, Williams has not shown that he has suffered any damage resulting from the alleged violation.  Williams offers no proof that he suffered  allergy symptoms as a result of dogs running loose at Sweetwater.  Indeed, the Plaintiff only visited a doctor in reference to his allergies *after* being fired.

Further, even if the Plaintiff's health and safety claims were valid, Gwinnett County Public School System is entitled to sovereign immunity.  Under the Georgia Constitution, sovereign immunity bars suit against the state and its political subdivisions in the absence of an explicit waiver by the state legislature.  GA. CONST.

---

[3]The Plaintiff filed a complaint with the Gwinnett County Health Department regarding the presence of dogs at Sweetwater.  The department dismissed the complaint, noting that the dogs were properly licensed.

art. I, § II, ¶ IX(e); <u>see also</u> <u>Hennessy v. Webb</u>, 245 Ga. 329 (1980) (noting that school boards, as political subdivisions of state, are entitled to sovereign immunity).  Here, the Plaintiff has not identified any such waiver.   Indeed, the Georgia legislature has not waived sovereign immunity for the Gwinnett County Public School System.  <u>See</u> O.C.G.A § 50-21-22(5) (excluding school districts from Georgia Tort Claims Act). For these reasons, there is no issue of material fact as to the Plaintiff's claims based on  health and safety regulations.

2.    <u>Negligence Claims</u>

The Plaintiff's also asserts a claim for negligent failure "to supervise and manage the dogs at plaintiff's place of employment." (Compl. ¶ 19.)  As discussed above, the Plaintiff has not shown any damages resulting from the Defendants' conduct.  Further, as discussed above, Defendant Gwinnett County Public School System is entitled to sovereign immunity with respect to this claim.

Also, Defendant Eaton is entitled to official immunity.  The doctrine of official immunity shields state officers from liability arising from the performance of discretionary duties unless the officer acts with malice or intent to injure.  GA. CONST. art. I, § II, ¶ IX(d).  "A discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."  <u>Murphy</u>

v. Bajjani, 282 Ga. 197, 199 (2007) (quoting Leake v. Murphy, 284 Ga. App. 490, 495 (2007)).

Here, supervising the dogs working in the Read 180 program is a discretionary function. Developing and executing policies for managing such a program involves deliberation and judgment in light of all the facts and circumstances. See id. (finding that preparing school safety plan was discretionary duty). The Plaintiff has produced no facts showing that Eaton acted with malice or intent to injure. Thus, Eaton is entitled to official immunity as to the Plaintiff's negligent supervision claim. For these reasons, there is no issue of material fact as to the Plaintiff's health and safety claims.

## IV.  Conclusion

For the reasons set forth above, the Court GRANTS the Defendants' Motion for Summary Judgment [Doc. 24].

SO ORDERED, this 30 day of September, 2010.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge